Ted L. Lynn and Beatrice I. Lynn v. Commissioner.
Lynn v. Commissioner
Docket No. 73191.
United States Tax Court
T.C. Memo 1959-188; 1959 Tax Ct. Memo LEXIS 59; 18 T.C.M. (CCH) 847; T.C.M. (RIA) 59188; October 13, 1959
*59 Ted L. Lynn and Beatric I. Lynn, pro se., 11321 Kinloch, Detroit, Mich. Robert W. Siegel, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The Commissioner determined deficiencies in income tax of the petitioners and additions to tax under section 6653(a) of the Internal Revenue Code of 1954 for negligence as follows: Deficiency
Addition to Tax Sec.
Year
in Tax
6653(a) I.R.C. 1954
Ted L. Lynn and Beatrice I. Lynn
1954
$576.88
$28.84
Beatrice I. Lynn
1955
561.00
28.05
The issues for decision are the correctness of the respondent's action (1) in determining the amount of income received by petitioner Beatrice I. Lynn as tips during 1954 and 1955, and (2) in determining that for 1954 and 1955 the petitioners are liable for additions to tax under section 6653(a) of the Code of 1954 for negligence. Findings of Fact The petitioners Ted L. Lynn and Beatrice I. Lynn, husband and wife, residing in Detroit, Michigan, timely filed their joint Federal income tax return for 1954 with the district director in Detroit. Beatrice I. Lynn also filed her separate Federal income *60 tax return for 1955 with the district director in Detroit. Since Ted L. Lynn is involved here only by reason of his having filed a joint income tax return for 1954 with Beatrice I. Lynn, the latter sometimes hereinafter will be referred to as the petitioner. During 1954 the petitioner began work as a waitress at Beauchamps Restaurant in Detroit and continued working there in that capacity throughout 1955. At the time the petitioner began working at Beauchamps it had been in business for at least 9 years. During the years in issue Beauchamps served a la carte dinners with prices for the main course ranging from around $2.50 upwards. Almost always full course meals were served during the dinner hour. The restaurant also served liquor and mixed drinks at the bar and at the tables. Entertainment in the form of a three-or four-piece band was provided for dancing. The monthly sales of food and liquor made by Beauchamps were as follows for the years here involved: 1954
Month
Food
Liquor
Total
January
$38,104.07
$22,298.50
$ 60,402.57
February
37,976.00
23,516.06
61,492.06
March
36,630.60
22,671.80
59,302.40
April
$35,894.53
$22,082.94
$ 57,977.47
May
39,805.99
22,594.70
62,400.69
June
37,835.48
22,071.75
59,907.23
July
38,085.06
21,640.76
59,725.82
August
34,275.06
20,677.40
54,952.46
September
35,433.85
21,363.20
56,797.05
October
40,979.99
26,552.40
67,532.39
November
37,882.27
25,144.52
63,026.79
December
43,265.84
30,048.45
73,314.29
Total
$736,831.22
1955
January
$25,142.93
$41,184.40
$ 66,327.33
February
37,508.11
23,999.07
61,507.18
March
39,923.21
25,343.83
65,267.04
April
38,868.26
23,053.78
61,922.04
May
39,624.89
24,599.50
64,224.39
June
39,238.15
20,817.17
60,055.32
July
36,828.66
18,234.50
55,063.16
August
37,743.12
18,624.86
56,367.98
September
37,754.76
19,133.93
56,888.69
October
43,703.10
22,254.65
65,957.75
November
40,282.03
21,376.94
61,658.97
December
45,445.21
25,726.99
71,172.20
Total
$746,412.05
*61 Approximately two-thirds of Beauchamps' food and liquor sales were made during its evening meal. The petitioner's station during 1954 and 1955 was termed the "center terrace" and consisted of five tables, each seating four persons. The petitioner worked her station with another waitress as partner and with whom she shared the tips equally. The petitioner began serving at 5:30 p.m. She served her station until about 9 p.m., which was shortly after customers ceased to be seated at her tables because the tables she served occupied a portion of the floor that was used for dancing. While the terrace was being cleared for dancing the petitioner was in the downstairs portion of the restaurant where she sat and drank coffee. After the "center terrace" had been cleared for dancing the petitioner did not have a station. However, she returned to the dining floor for about 2 hours during which time she relieved waitresses who had longer periods of service at Beauchamps than she and who continued to serve until 2 a.m. The petitioner was not entitled to and did not receive any tips made by customers during the 2-hour period she relieved other waitresses. The petitioner went home around 11:30 *62 p.m. or 12 p.m. The petitioner was one of the better waitresses at Beauchamps. Waitresses entering the employment of Beauchamps were first assigned to work on the "terrace." Although Beauchamps employed one or more hostesses who directed customers to seats, the hostesses did not seat the best customers on the "terrace." Those customers who usually ordered the more expensive meals were seated in the restaurant's dining room or in the bar side of the restaurant. During 1954, the petitioner's first year at Beauchamps, there were occasions during the dinner period when the petitioner stood for "an hour or so" without a customer at her station. During 1954 and 1955 Beauchamps had some customers who charged their meals. These customers indicated on their checks the amount to be charged to them as a tip to the waitress. The other customers paid their checks at the time of their meal. They gave the waitress an amount of cash with which she paid the cashier the amount of the check and then offered to return the change to the customer. In the case of practically all checks the customers either caused to be charged to them or paid to the waitress some amount as a tip. The petitioner's tips *63 for the month of October 1955 from customers whose checks were charged amounted to $123.29, after allowing to another waitress one-half of the tips of those customers who received service from both that waitress and petitioner during their meals. The tips of $123.29 were composed of amounts ranging from 20 cents to $10 and pertained to 72 checks, or an average per check of approximately $1.70. In addition, the petitioner during the same month and without assistance from any other waitress served meals and drinks the checks for which totaled $2,030.10 and were paid in cash at the time served. The petitioner worked at Beauchamps 269 days in 1954 and 280 days in 1955 but did not keep any books or records which reflected the income she received as tips during either of those years. In the joint income tax return filed by petitioner and her husband for 1954, the petitioner's salary from Beauchamps was shown as $1,619.50, and her salary from another employer was shown as $29. In her return for 1955 her salary from Beauchamps was shown as $1,551.45. Income reported as received from tips was $165 for 1954 and $456 for 1955. The petitioner and her husband employed an accountant to prepare *64 their joint return for 1954. The accountant informed them that income received from tips was taxable. Since petitioners had no record of the tips received by petitioner during the year, the accountant suggested and the petitioners pursuant to such suggestion reported as income from tips 10 per cent of petitioner's total salary for that year, or the above-mentioned amount of $165. In determining the deficiencies involved herein the respondent determined that petitioner's income from tips had been understated in her return for 1954 by $3,063 and in her return for 1955 by $2,904. Opinion The petitioners contend that the amounts reported in their returns for 1954 and 1955 as income received by petitioner as tips in those years were correct and that we should so find. The respondent takes the position that his determination as to the understatements of income reported from such source for the years in question was correct and should be sustained. The recent case of Dorothy L. Sutherland, 32 T.C. - (June 30, 1959), involved the tax liability for 1953, 1954, and 1955 of a waitress who, like the petitioner herein, did not keep any records of the income received by her as tips. There *65 we pointed out that every taxpayer is required by law to report in his income tax return, fully and honestly, every item of gross income received, and must maintain adequate records of some kind which will show to him and to the Commissioner the amount of income of all types received in each year; that if the taxpayer does not keep any records to show the full amount of every kind of income received in a taxable year, or if such records as are kept do not clearly show the entire income, the Commissioner is authorized to make a computation of the amount of income in accordance with such method as in his opinion does clearly show the full amount of income received; that a computation of income so made by the Commissioner is presumptively correct under law and the taxpayer has the burden of proving that it is erroneous; and that such burden is not discharged by the taxpayer's estimates of income, or his unsubstantiated, uncorroborated, and self-serving testimony that the amounts reported in his return are correct. The petitioner did not keep any record of the tips she received during the taxable years in question, and her testimony is to the effect that the amounts which she reported *66 in her returns for the respective years as income from that source, namely, $165 for 1954 and $456 for 1955, or an average of 58 cents per day that she worked in 1954 and an average of $1.63 per day that she worked in 1955, are correct. We are unable to find in the testimony of witnesses produced by the petitioner or elsewhere in the record corroboration or substantiation of the petitioner's testimony in the foregoing respect. The respondent submitted evidence showing that the petitioner's tips for the month of October 1955 from customers who charged their checks amounted to $123.29, after allowing to another waitress one-half of the tips of those customers who received service from both that waitress and petitioner during their meals, that the tips of $123.29 were composed of amounts ranging from 20 cents to $10, and that the $123.29 of tips pertained to 72 checks, or an average per check of approximately $1.70. The respondent's evidence further shows that tips received by petitioner with respect to 26 of the 72 checks were in amounts of $1 or less and that only one $10 tip was received. In addition to the foregoing, the respondent submitted evidence showing that during the same *67 month the petitioner, without assistance from any other waitress, served meals and drinks the checks for which totaled $2,030.10 and which were paid in cash at the time served. The respondent tells us that in determining the deficiencies herein he concluded that the petitioner received tips of at least 10 per cent of the amount of the above-mentioned checks totaling $2,030.10, or $203.01; that by adding the latter amount to the tips of $123.29 he obtained a total of $326.30, which he determined to be the amount of petitioner's tips for the month of October 1955; and that by a proration, on a basis not shown by the record, of the total of $326.30, he determined the amount of the petitioner's tips for 1954 and 1955 and the amounts by which the petitioner had understated her income from that source for the respective years. A consideration of the income reported by petitioner as having been received from tips for the years in question and the amounts of understatement of income from that source as determined by respondent in connection with the number of days worked by petitioner in each of the respective years discloses that the respondent has determined that the petitioner received *68 income from tips in the average amount of $12 per day for each day that she worked in 1954 and 1955, or total income from tips of $3,228 for 1954 when the petitioner worked 269 days and $3,360 for 1955 when the petitioner worked 280 days. The petitioner's salary from Beauchamps as reported in her returns was $1,619.50 for 1954 and $1,551.45 for 1955. In determining the deficiencies herein the respondent made no adjustment with respect to either of those amounts and no controversy is presented herein with respect to their correctness. The record contains no explanation as to why Beauchamps for 1954, when petitioner was a new waitress there and worked 11 days less, paid her $68.05 more than for 1955. We are left to speculate as to the reason for the variance in salary and we decline to do that. Although the petitioner testified that in 1954 there were occasions during the dinner period when she stood for an hour or so without a customer at her station, we are unable to find that such occasions were anything other than rare and infrequent. It is true that Beauchamps' total sales for October 1955 of $65,957.75 were the fifth highest for the 24-month period of 1954 and 1955 and were *69 substantially in excess of the average monthly sales of $61,402.61 for 1954 and $62,201 for 1955. However, that fact standing alone is not sufficient to warrant the conclusion that petitioner was prejudiced by the respondent's use of the amount he determined as petitioner's tips for that month as a basis for determining the total amount of the petitioner's tips for 1954 and 1955. The petitioner was one of the better waitresses at Beauchamps and we fail to find in the record any indication that her monthly income from tips bore any close relationship to the fluctuation in total monthly sales of the restaurant.
From the evidence presented we are satisfied that during the years in question the petitioner received income from tips greatly in excess of the amounts reported in her income tax returns for the respective years. Since we cannot find from the record that petitioner received any lesser amounts of income from tips during the respective years than the respondent has determined, we must sustain his determination. As was said in Dorothy L. Sutherland, supra, taxpayers who receive income as tips but do not keep written records of the tips are "extremely negligent" in failing to *70 keep such records. Since the petitioner did not keep any record of the tips she received during the years in question and since she received income from tips greatly in excess of the amounts reported in her returns for those years, we sustain the respondent's determination of the additions to tax provided in section 6653(a) of the Code of 1954 for negligence. Decision will be entered for the respondent.